**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE MOUSER, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21-cv-06478 |
| v. | ) ) | Hon. Joan B. Gottschall |
| PERSONA IDENTITIES, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant Persona Identities, Inc. ("Persona"), by and through its undersigned counsel, hereby moves to dismiss Plaintiff Christine Mouser's ("Plaintiff") Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Persona files the accompanying memorandum of law in support of its motion to dismiss.

Dated: January 10, 2022

PERSONA IDENTITIES, INC.

By: /s/ Amy L. Lenz
Amy L. Lenz (alenz@bakerlaw.com)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200

Joel Griswold (jcgriswold@bakerlaw.com)
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4088

*Attorneys for Persona Identities, Inc.*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................................2

BACKGROUND ....................................................................................................................3

ARGUMENT .........................................................................................................................5

I.     BIPA ....................................................................................................................5

II.    LEGAL STANDARD...........................................................................................6

III.   PLAINTIFF DOES NOT STATE A CLAIM FOR ANY RELIEF
BECAUSE BIPA EXPRESSLY STATES THAT PHOTOGRAPHS
AND INFORMATION DERIVED FROM PHOTOGRAPHS ARE NOT
COVERED BY BIPA. ..........................................................................................6

IV.   PLAINTIFF DOES NOT STATE A CLAIM FOR $5,000 IN
LIQUIDATED DAMAGES BECAUSE PLAINTIFF DOES NOT
PLEAD FACTS FROM WHICH TO REASONABLY INFER THAT
DEFENDANT INTENTIONALLY OR RECKLESSLY VIOLATED
BIPA. ...................................................................................................................7

V.    PLAINTIFF DOES NOT STATE A CLAIM FOR $1,000 IN
LIQUIDATED DAMAGES BECAUSE PLAINTIFF DOES NOT
PLEAD FACTS FROM WHICH TO REASONABLY INFER THAT
DEFENDANT NEGLIGENTLY VIOLATED BIPA. .........................................12

VI.   PLAINTIFF'S BIPA CLAIM FAILS AS A MATTER OF LAW
BECAUSE BIPA DOES NOT APPLY EXTRATERRITORIALLY
AND NONE OF PERSONA'S ALLEGED CONDUCT OCCURRED IN
ILLINOIS...........................................................................................................13

VII.  ALTERNATIVELY, PLAINTIFF DOES NOT STATE A CLAIM FOR
ANY RELIEF BECAUSE PLAINTIFF EXPRESSLY CONSENTED
TO THE COLLECTION, STORAGE, AND DISCLOSURE OF HER
BIOMETRIC INFORMATION..........................................................................15

VIII. BIPA VIOLATES THE FIRST AMENDMENT. .................................................19

      a.    BIPA Is An Unconstitutional Restraint on Commercial Speech. ..............19

      b.    Alternatively, BIPA Is A Content-Based Restriction Subject to
Strict Scrutiny. ...........................................................................................22

CONCLUSION.....................................................................................................................23

i

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................6

*Avery v. State Farm Mut. Ins. Co.*,
    835 N.E.2d 81 (Ill. 2005) ...............................................................................13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................6

*Bruns v. City of Centralia*,
    2014 IL 116998 .....................................................................................................12

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ..............................................................................................20

*Chiriboga v. Nat'l R.R. Passenger Corp.*,
    687 F. Supp. 2d 764 (N.D. Ill. 2009) ...................................................................12

*Cupp v. Murphy*,
    412 U.S. 291 (1973) ..............................................................................................20

*Daniel v. Cantrell*,
    375 F. 3d 377, 383-84 (6th Cir. 2004) .................................................................21

*Huggins v. SpaClinic, LLC*,
    No. 09 C 2677, 2010 WL 963924 (N.D. Ill. Mar. 11, 2010) ..................................9

*Komorowski v. All-American Indoor Sports, Inc.*,
    No. 13-2177, 2013 WL 4766800 (D. Kan. Sept. 4, 2013) ......................................9

*Landau v. CAN Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. Ct. 2008) .....................................................................14

*McGoveran v. Amazon Web Servs., Inc.*,
    488 F. Supp. 3d 714 (S.D. Ill. 2020) ...............................................................14, 15

*McGoveran v. Amazon Web Servs., Inc.*,
    No. CV 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021) ...............14, 15

*Mijatovich v. Columbia Sav. & Loan Ass'n*,
    168 Ill. App. 3d 313 (1st Dist. 1988) ......................................................................8

4877-3479-7318.4

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ........................................................................14

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   138 S.Ct. 2361 (2018) ..............................................................................................................22

*Neuberg v. Michael Reese Hosp. & Med. Ctr.*,
   60 Ill. App. 3d 679 (1st Dist. 1978) ..........................................................................................9

*People v Sequoia Books, Inc.*,
   127 Ill. 2d 271 (1989) ..............................................................................................................20

*Plocar v. Dunkin' Donuts of Am., Inc.*,
   103 Ill. App. 3d 740 (1st Dist. 1981) ........................................................................................8

*Pub. Fin. Corp. v. Davis*,
   66 Ill. 2d 85 (1976) ....................................................................................................................8

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ..................................................................................................................22

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................................................14

*Rogers v. CSX Intermodal Terminals, Inc.*,
   409 F. Supp. 3d 612 (N.D. Ill. 2019) ........................................................................................9

*Sea v. CCCJV Am. Holdings, Inc.*,
   No. CV 11-05031, 2011 WL 4946507 (C.D. Cal. Oct. 18, 2011) ............................................9

*Smith v. Daily Mail Pub. Co.*,
   443 U.S. 97 (1979) ....................................................................................................................20

*Smith v. Maryland*,
   442 U.S. 735 (1979) ..................................................................................................................22

*Sorrell v. IMS Health, Inc.*,
   564 U.S. 552 (2011) ............................................................................................................19, 20

*State v. Madrigal*,
   241 Ill. 2d 463 (2011) ..............................................................................................................21

*Tobolt v. Allstate Ins. Co.*,
   75 Ill. App. 3d 57 (1st Dist. 1979) ............................................................................................8

*U.S. West, Inc. v. FCC*,
   182 F.3d 1224 (10th Cir. 1999) ..........................................................................................19, 20

iii

*United States v. Caira*,
    833 F.3d 803 (7th Cir. 2016) .............................................................22

*United States v. Dionisi*o,
    410 U.S. 1 (1973) ................................................................................20

*United States v. Emmett*,
    321 F.3d 669 (7th Cir. 2003) .............................................................20

*Vidoni v. Acadia Corp*.,
    No. 11-cv-00448, 2012 WL 1565128 (D. Me. Apr. 27, 2012) ...............9

*Watson v. Legacy Healthcare Financial Services, LLC*,
    2021 IL App (1st) 210279 ...................................................................10

*Ziarko v. Soo Line R. Co*.,
    161 Ill. 2d 267 (Ill. 1994) ....................................................................8

**Statutes**

740 ILCS 14/1 *et seq.* ................................................................................5, 21

740 ILCS 14/10 ............................................................................... *passim*

740 ILCS 14/15(a)-(c) ........................................................................6

740 ILCS 14/20 ...........................................................................2, 6, 7, 12

740 ILCS 14/25 ........................................................................................20

**Other Authorities**

Cambridge Dictionary (last accessed Jan. 10, 2022) ...........................10, 11

dictionary.com (last accessed Jan. 10, 2022) ...........................................11

Fed. R. Civ. P. 12(b)(6)...................................................................2, 6, 7, 13

Merriam-Webster Dictionary (last accessed Jan. 10, 2022) ...............10, 11, 12

iv

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTINE MOUSER, individually and on behalf of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21-cv-06478 |
| v. | ) ) | Hon. Joan B. Gottschall |
| PERSONA IDENTITIES, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE
12(b)(6) MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Amy L. Lenz
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200 (phone)
alenz@bakerlaw.com

Joel Griswold
**BAKER & HOSTETLER LLP**
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
(407) 649-4088 (phone)
jcgriswold@bakerlaw.com

*Attorneys for Persona Identities, Inc.*

**INTRODUCTION**

Plaintiff Christine Mouser's ("Plaintiff") putative Class Action Complaint [Doc. 2-2] ("Complaint") must be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has not pled facts plausibly demonstrating a Biometric Information Privacy Act ("BIPA") claim against Persona Identities, Inc. ("Persona"). Plaintiff fails to plausibly allege a valid BIPA claim because BIPA expressly states that photographs are not covered by the Act. They are expressly carved out of the definition of biometric identifier and biometric information. 740 ILCS 14/10 ("biometric identifiers do not include … photographs . . ."; "Biometric information" is "any information regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."; "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.") Accordingly, Defendant did not violate BIPA at all.

Even if the Court determines that Plaintiff has stated a claim that Defendant violated BIPA, Plaintiff certainly does not allege facts from which a reasonable inference could be drawn that Defendant intentionally, recklessly, or negligently violated BIPA—as is necessary to state a claim for relief for liquidated damages under 740 ILCS 14/20 (1) & (2). This is particularly true in light of BIPA's express carveout language pertaining to photographs. Accordingly, at a minimum, Plaintiff's claim for relief for liquidated damages should be dismissed with prejudice.

Additionally, Plaintiff fails to plausibly allege a valid BIPA claim because BIPA does not have extraterritorial application. Plaintiff fails to allege any facts connecting Persona's actions to Illinois and, instead, only alleges that Plaintiff used Persona's software in Illinois. Persona cannot be liable for a violation of BIPA because Persona did not act within the state of Illinois.

Regardless, even if BIPA did apply, Plaintiff fails to plausibly allege a valid BIPA claim because Plaintiff was provided written notice that Plaintiff's biometric information or biometric

2

identifiers may be collected or stored, and Plaintiff consented to its collection and storage when signing up as a DoorDash delivery driver.

Finally, BIPA is an unconstitutional restraint on speech in violation of the First Amendment. The statute cannot survive either strict scrutiny or heightened scrutiny and, consequently, is invalid.

## BACKGROUND

On October 22, 2021 Plaintiff filed her putative class action Complaint alleging violations of BIPA. Plaintiff alleges that Persona violated BIPA through Plaintiff's use of Persona's Application Programming Interface ("API"). Specifically, Plaintiff alleges that when she "registered to become a DoorDash delivery driver" she was "required to upload to Defendant's API platform a photo of her Illinois Driver's License, as well as a 'selfie' picture of her face, so that Defendant could biometrically compare the 'selfie' with Plaintiff's picture on her Illinois Driver's License." Compl. ¶ 21. Plaintiff also alleges that "Defendant stores the biometric identifiers it collects for later use" for example, "Plaintiff was required to upload a second 'selfie' to Defendant's API platform . . . to verify her identity, at which point Defendant compared her facial geometry in this second 'selfie' to her facial geometry it had previously stored." Compl. ¶ 22.

Based on these allegations, Plaintiff asserts individual and putative class claims for alleged violations of BIPA. Compl. ¶¶ 36-45. She seeks to represent, "[a]ll individuals whose facial biometric identifiers or biometric information were collected, captured, stored, disseminated, or otherwise used by Defendant within the state of Illinois any time within the applicable limitations period." Compl. ¶ 28.

Plaintiff does not allege that she was unaware her photographs were being used for identification. To the contrary, Plaintiff knowingly submitted a photograph of her driver's license and a photograph of her face when she signed up to drive for DoorDash. Compl. ¶ 21. Instead, she alleges only that Persona failed to give notice and obtain Plaintiff's consent "in writing" and that, on information and belief "Defendant is compensated by its clients depending on the number of biometric verifications it performs." Compl. ¶¶ 41-42. Plaintiff fails, however, to provide the entire details of her registration process. Prior to uploading a "selfie" and her driver's license, Plaintiff was required to agree to the capture and storage of her biometric information and was provided the terms of DoorDash's Privacy Policy, by hyperlink, to continue with the registration process. (Declaration of Elizabeth Chiu ("Chiu Decl."), ¶ 4). The Privacy Policy contained a written notice that it may "collect profile information associated with your Dasher account. This includes information such as name, email address, phone number, preferred region and city, address, social security number, and other information that may identify you." *Id.* at Ex. 1. The Privacy Policy also included a data retention provision that provided: "We will retain your personal information for as long as your account is active or as needed to provide you services and to maintain a record of your transactions for financial reporting purposes. We will also retain and use your personal information as necessary to comply with our legal obligations, resolve disputes, and enforce our agreements." *Id.*

## ARGUMENT

I.  **BIPA**

BIPA regulates a private entity's collection, capture, purchase, receipt through trade or otherwise obtaining a "biometric identifier" and "biometric information." 740 ILCS 14/1 *et seq.* A "biometric identifier" is "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," but, significantly, **biometric identifiers do not include … photographs**…" 740 ILCS 14/10 (emphasis added). "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, **based on an individual's biometric identifier** used to identify an individual." *Id*. (emphasis added). **"Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers**." *Id.* (emphasis added).

Specifically, BIPA provides that:

(a) A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

(b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
(1) informs the subject or the subject's legally authorized representative in writing
that a biometric identifier or biometric information is being collected or stored;
(2) informs the subject or the subject's legally authorized representative in writing
of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
(3) receives a written release executed by the subject of the biometric identifier or
biometric information or the subject's legally authorized representative.

5

> (c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

740 ILCS 14/15(a)-(c).

BIPA provides that "[a]ny person aggrieved by a violation" of BIPA can obtain the following relief:

> (1) against a private entity that **negligently** violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
> (2) against a private entity that **intentionally or recklessly** violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
> (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
> (4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20 (emphasis added). BIPA does not provide strict liability for a damages claim. *Id.*

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading is required to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Here, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because Plaintiff has not pled facts plausibly demonstrating a BIPA claim.

## III.  PLAINTIFF DOES NOT STATE A CLAIM FOR ANY RELIEF BECAUSE BIPA EXPRESSLY STATES THAT PHOTOGRAPHS AND INFORMATION DERIVED FROM PHOTOGRAPHS ARE NOT COVERED BY BIPA.

Plaintiff does not state a claim for any relief because Persona has not violated BIPA. In the Complaint, Plaintiff seeks: (1) class certification, (2) a declaratory judgment that Persona has violated BIPA, (3) statutory damages for each willful or negligent violation of BIPA, (4) injunctive

and other equitable relief as necessary to protect the interests of Plaintiff and the Class, (5) reasonable attorneys' fees, costs, and other litigation expenses, (6) pre- and post-judgment interest, and (7) such other and further relief as the Court deems just and equitable. Compl. pp. 10-11.

BIPA does not apply to Persona's software because BIPA's plain language expressly excludes both photographs and information derived from photographs. BIPA covers two categories of information: (1) original sources of information about a person ("biometric identifiers" defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry") and (2) data derived from those original sources ("biometric information" defined as "information . . . based on an individual's biometric identifier"). 740 ILCS 14/10. BIPA's definition of "biometric identifiers" expressly excludes "photographs," and BIPA only covers a "scan of . . .face geometry," not a scan of a photograph. *Id.* Moreover, BIPA's definition of "biometric information" excludes "information derived from items or procedures excluded under the definition of biometric identifiers," such as photographs. *Id.*

Because photographs and information derived therefrom are expressly excluded from BIPA, Plaintiff's BIPA claim must be dismissed in its entirety and with prejudice pursuant to Rule 12(b)(6).

## IV. PLAINTIFF DOES NOT STATE A CLAIM FOR $5,000 IN LIQUIDATED DAMAGES BECAUSE PLAINTIFF DOES NOT PLEAD FACTS FROM WHICH TO REASONABLY INFER THAT DEFENDANT INTENTIONALLY OR RECKLESSLY VIOLATED BIPA.

Even if Plaintiff stated a claim for a violation of BIPA (she has not), Plaintiff's claim for $5,000 in liquidated damages for each violation must be dismissed because Plaintiff does not allege facts showing that Persona "intentionally or recklessly" committed such alleged violation. 740 ILCS 14/20.

7

The Illinois Supreme Court holds that "tort intent means a desire to cause consequences or at least a substantially certain belief that the consequences will result." *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 272-43 (Ill. 1994) (internal quotation and alteration marks omitted). Furthermore, "reckless conduct which will support a cause of action . . . is conduct from which the actor knows [injury] is certain or substantially certain to result" or "situations in which there is a high degree of probability that [injury] will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976) (affirming dismissal of tort claims as inadequately pled); *see also Plocar v. Dunkin' Donuts of Am., Inc.*, 103 Ill. App. 3d 740, 745-46 (1st Dist. 1981) (same); *Ziarko*, 161 Ill. 2d at 273 (equating "willful and wanton" conduct with "reckless" conduct and explaining it consists of "a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through careless when it could have been discovery by the exercise of ordinary care") (internal quotations and alteration marks omitted).

Significantly, "[a] mere statement that an act was done with a certain purpose or intent, without a statement of facts showing such purpose or intent, is a conclusion of law" and is not sufficient to state a claim for intentional or reckless conduct. *Tobolt v. Allstate Ins. Co.*, 75 Ill. App. 3d 57, 63 (1st Dist. 1979). *Tobolt,* like this case, involved a complaint that repeatedly characterized the defendant's actions as "willful, wanton, malicious, reckless and intentional," but did not include any factual allegations supporting that characterization. *Id*. at 66-68. The court dismissed claims as inadequately pled, holding "[t]he allegations that defendant's acts were willful, wanton, malicious, reckless, intentional or in bad faith are not factual allegations; nor are they supported by factual allegations." *Id.* at 71; *see also Mijatovich v. Columbia Sav. & Loan Ass'n*, 168 Ill. App. 3d 313, 316 (1st Dist. 1988) ("mere addition of phrases such as 'willful and wanton,' or similar

terms, is not sufficient to allege reckless conduct . . . ."); *Neuberg v. Michael Reese Hosp. & Med. Ctr.,* 60 Ill. App. 3d 679, 684-85 (1st Dist. 1978) ("merely adding that such actions were done 'willfully, wantonly, and with a reckless disregard for the health, well-being and safety of plaintiffs . . . cannot take the place of a clear statement that defendants committed the alleged acts with the intention of inflicting severe emotional distress upon plaintiffs.") Indeed, in *Rogers v. CSX Intermodal Terminals, Inc.,* 409 F. Supp. 3d 612, 618-19 (N.D. Ill. 2019), the court dismissed plaintiff's complaint which pled in a similarly conclusory fashion that defendant's "violations of BIPA . . . were knowing and willful," finding that the allegations were insufficient to allow the court to infer that defendant acted intentionally or recklessly.

Cases holding that plaintiffs failed to adequately plead "willful," "reckless," or "intentional" violations under federal statutes likewise abound. *See, e.g., Komorowski v. All-American Indoor Sports, Inc*., No. 13-2177, 2013 WL 4766800, at *3 (D. Kan. Sept. 4, 2013) ("Merely alleging that a defendant should be aware of a statute and fails to comply with it . . . is insufficient to state a claim for willfulness."); *Vidoni v. Acadia Corp*., No. 11-cv-00448, 2012 WL 1565128, at *4 (D. Me. Apr. 27, 2012) ("merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, *i.e.,* a voluntary, deliberate, or intentional violation."); *Sea v. CCCJV Am. Holdings, Inc*., No. CV 11-05031, 2011 WL 4946507, at *2 (C.D. Cal. Oct. 18, 2011) (holding that mere allegations of facts showing that information about a statute was available to defendant did nothing to support "naked assertion" that defendant was notified of statute's provision and knowingly ignored them); *Huggins v. SpaClinic, LLC*, No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (granting motion to dismiss because allegations that statute was well-publicized and known in the industry "are not

9

specific to the defendant" and "do not permit the inference that [defendant]'s conduct was anything more than negligent").

Here, the plain language of BIPA expressly states that photographs and information derived from photographs are not covered by BIPA. 740 ILCS 14/10 ("biometric identifiers do not include . . . photographs . . ."; "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."; "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.") Plaintiff does not include any factual allegations in her Complaint supporting the conclusory assertions that Persona intentionally or recklessly violated BIPA, much less in light of BIPA's plain language expressly carving out "photographs." *See supra* § IV.

Moreover, even if one were to ignore the BIPA's plain language and unambiguous exclusion of "photographs," the BIPA is vague and ambiguous as to what otherwise constitutes a "scan of face geometry." The BIPA does not define "face geometry" or "scan" anywhere in the Act. The legislative history of the BIPA, likewise, is devoid of such definitions. Accordingly, courts have turned to the dictionary in an effort to ascertain the plain and ordinary meaning of undefined terms in the BIPA. *See Watson v. Legacy Healthcare Financial Services, LLC*, 2021 IL App (1st) 210279, ¶¶ 35, 55-60.

The dictionaries, however, do not provide clarity. As the term "face geometry" does not even appear in common English language dictionaries, there is no discernable plain meaning of "face geometry." *See, e.g.* Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/face%20geometry (last accessed Jan. 10, 2022); Cambridge Dictionary at https://dictionary.cambridge.org/us/spellcheck/english/?q=face+geometry (last accessed Jan. 10,

2022); dictionary.com at https://www.dictionary.com/misspelling?term=face%20geometry (last accessed Jan. 10, 2022). In sum, it is not clear what the BIPA intended to cover as a "scan of face geometry."

Attempting to cobble together a definition of "scan of face geometry" from English language dictionary definitions of the individual words ("face", "geometry," and "scan") does nothing to alleviate the lack of clarity and ambiguity. "Face," generally, is defined in English language dictionaries as "the front part of the head that in humans extends from the forehead to the chin and includes the mouth, nose, cheeks, and eyes." Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/face ((last accessed Jan. 10, 2022); *see also* Cambridge Dictionary at https://dictionary.cambridge.org/us/dictionary/english/face (last accessed Jan. 10, 2022); dictionary.com at https://www.dictionary.com/browse/face (last accessed Jan. 10, 2022). "Geometry" has definitions that include "a branch of mathematics that deals with the measurement, properties, and relationships of points, lines, angles, surfaces, and solids", "configuration," or "an arrangement of objects or parts that suggests geometric figures." Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/geometry; dictionary.com at https://www.dictionary.com/browse/face (last accessed Jan. 10, 2022) (including, amongst other definitions, "the shape or form of a surface or solid" and "a design or arrangement of objects in simple rectilinear or curvilinear form.") And the noun "scan" has definitions in English language dictionaries that include "an image formed by scanning something: such as (a) a depiction (such as a photograph) of the distribution of a radioactive material in something (such as a bodily organ) [or] (b) an image of a bodily part produced (as by computer) by combining ultrasonic or radiographic data obtained from several angles or sections." Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/scan (last accessed Jan. 10, 2022). "Scanning" has

11

multiple definitions in English language dictionaries that include, but are not limited to, "to investigate thoroughly by checking point by point and often repeatedly" or "to glance from point to point of often hastily, casually, or in search of a particular item." Merriam-Webster Dictionary at https://www.merriam-webster.com/dictionary/scan (last accessed Jan. 10, 2022). In sum, the English language does not clarify what constitutes a "scan of face geometry."

What is clear and unambiguous in the BIPA, however, is that BIPA does not apply to "photographs" or information derived therefrom. 740 ILCS 14/10. Plaintiff entirely fails to plead entitlement to relief based on the fact that Defendant acted negligently, intentionally, or recklessly, let alone with sufficient underlying facts for the court to infer Defendant acted with such a state of mind. Nor could Plaintiff allege facts supporting a culpable state of mind to violate the BIPA in light of the Act's express statement that "biometric identifiers do not include …photographs" (740 ILCS 14/10) and ambiguity of the Act as to the meaning of "scan …of face geometry." *Supra* at 10-12.

Accordingly, Plaintiff's claim for $5,000 in liquidated damages per violation pursuant to 740 ILCS 14/20(2) should be dismissed.

## V. PLAINTIFF DOES NOT STATE A CLAIM FOR $1,000 IN LIQUIDATED DAMAGES BECAUSE PLAINTIFF DOES NOT PLEAD FACTS FROM WHICH TO REASONABLY INFER THAT DEFENDANT NEGLIGENTLY VIOLATED BIPA.

To support a claim for a negligent violation of BIPA, Plaintiff must allege facts showing the "existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. A plaintiff cannot plead a negligence claim if no duty existed, and a duty only exists to act as a reasonably prudent person. *Id*. at ¶ 14. "Duties can arise from common law, statute, ordinance, or regulation." *Chiriboga v. Nat'l R.R. Passenger Corp.*, 687 F. Supp. 2d 764, 768 (N.D. Ill. 2009).

Here, there are duties that Plaintiff alleges Persona was required to follow but did not arise from statute, *i.e.* from BIPA, because BIPA excludes from coverage the collection of photographs and information derived from photographs.

Further, regardless of whether Plaintiff's alleged actions of "upload[ing] . . . a photo of her Illinois Driver's License, as well as a 'selfie' picture of her face," (Compl. ¶ 21), imposed duties upon Persona under BIPA, Plaintiff has not alleged facts showing that it was unreasonable to assume that photographs and information derived from photographs were not covered by BIPA. The plain language of BIPA states that "**biometric identifiers do not include … photographs …**" and that, for information to be covered "biometric information" it must be "**based on an individual's biometric identifier.**" 740 ILCS 14/10 (emphasis added). Additionally, the BIPA expressly states that **"[b]iometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers**." *Id.* (emphasis added). Additionally, as discussed above, the BIPA is vague and ambiguous as to what otherwise constitutes a "scan of face geometry." *Supra* at 10-12.

Because BIPA expressly excludes photographs, and the BIPA, legislature, and dictionaries do not define "scan of face geometry," Plaintiff has not alleged facts that plausibly demonstrate that Persona's alleged actions were an unreasonable violation of the BIPA. Therefore, Plaintiff's claim for any negligent violation of BIPA fails to state a claim upon which relief can be granted.

## VI. PLAINTIFF'S BIPA CLAIM FAILS AS A MATTER OF LAW BECAUSE BIPA DOES NOT APPLY EXTRATERRITORIALLY AND NONE OF PERSONA'S ALLEGED CONDUCT OCCURRED IN ILLINOIS.

Plaintiff's Complaint should be dismissed in its entirety under Rule 12(b)(6) because it requires an application of a state statute to extraterritorial conduct. Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 81, 852 (Ill. 2005) (internal quotation

marks omitted). BIPA does not contain an express provision stating it is intended to apply extraterritorially. Courts have found that "none of BIPA's express provisions indicates that [it] was intended to have extraterritorial effect." *Monroy v. Shutterfly, Inc*., 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017); *see also Rivera v. Google Inc*., 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017); *McGoveran v. Amazon Web Servs., Inc*., No. CV 20-1399-LPS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021) ("BIPA does not contain an express provision stating it is intended to apply extraterritorially."). Therefore, "asserted violations of [BIPA] must have taken place in Illinois" to obtain any relief. *Rivera*, 238 F. Supp. 3d at 1100.

The Illinois Supreme Court held that this means plaintiffs must show that the circumstances relating to a defendant's alleged violations of BIPA must have "occur[red] primarily and substantially" in Illinois. *Avery*, 835 N.E.2d at 854; *see also Landau v. CAN Fin. Corp*., 886 N.E.2d 405, 409 (Ill. App. Ct. 2008) ("[T]he majority of circumstances relating to the alleged violation of the [statute]" must have occurred in the state.); *McGoveran v. Amazon Web Servs., Inc*., 488 F. Supp. 3d 714, 723 (S.D. Ill. 2020) (dismissing BIPA complaint where there was no indication that either defendants specifically targeted Illinois citizens).

The only non-conclusory conduct Plaintiff alleges to have occurred in Illinois was not by Persona, but by Plaintiff, who applied to be a driver with DoorDash using an Illinois driver's license. Compl. ¶ 21. Outside of this allegation, Plaintiff alleges in conclusory fashion that "Defendant captured, collected, stored, used, and profited from Plaintiff's biometric identifiers and/or biometric information in this state." Compl. ¶ 6. Plaintiff, however, fails to allege any non-conclusory allegations about what conduct Persona undertook **in Illinois** that violated BIPA as to Plaintiff. *See McGoveran v. Amazon Web Servs., Inc.*, No. CV 20-1399-LPS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) ("A plaintiff's residency is not enough to establish an Illinois

connection in order to survive a motion to dismiss based on extraterritoriality.") Further, Plaintiff's allegations only detail her interactions when signing up with DoorDash, but do not allege any direct interaction with Persona. *Id.* at *5 (extraterritoriality bars application of BIPA to third-party vendor where plaintiff does not allege any direct interaction with third party vendor, only with contracting party, even where contracting party in turn interacted with third-party).

Because Plaintiff does not allege and cannot show that Persona's alleged conduct occurred primarily and substantially in Illinois, she cannot state a BIPA claim against Persona. *See McGoveran*, 488 F. Supp. 3d at 723.

## VII. ALTERNATIVELY, PLAINTIFF DOES NOT STATE A CLAIM FOR ANY RELIEF BECAUSE PLAINTIFF EXPRESSLY CONSENTED TO THE COLLECTION, STORAGE, AND DISCLOSURE OF HER BIOMETRIC INFORMATION.

While the BIPA does not apply to photographs (*see supra* at § III), Plaintiff does not state a claim for any relief because Plaintiff expressly consented to the collection, storage, and disclosure of her biometric information when she applied to be a driver with DoorDash. Specifically, when Plaintiff was signing up to be a DoorDash driver, she was presented with the following screen:



(Chiu Decl., ¶ 4). By clicking "Continue," Plaintiff agreed that her biometric information would be collected and stored by DoorDash and its vendors, namely, Persona, and acknowledged that her data would be permanently deleted from the system after it was no longer necessary. Plaintiff was also presented with a hyperlink to DoorDash's Privacy Policy. (Chiu Decl., ¶ 4, Ex. 1). In Section 1 of DoorDash's Privacy Policy, Plaintiff was provided notice that DoorDash would also collect personal information, including **information that may identify her**, including her driver's license**:**

**1. Collection of Personal information**

When you use the Dasher Services, we may collect or receive Personal information about you. The types of Personal information that we may collect about you are:

*a. Information You Provide to Us Directly*

You may provide your personal information to us when you use the Dasher Services, including when you sign up to become a Dasher, authorize a background or driving history check, register as a Dasher, participate as a Dasher, participate in direct deposit, contact us with inquiries or otherwise communicate with us, or otherwise access or use the Dasher Services. This information may include:

- Dasher Profile – We collect profile information associated with your Dasher account. This includes information such as name, email address, phone number, preferred region and city, address, social security number, and other information that may identify you. We may also collect your preferences, such as language preference, and preferences to receive texts instead of telephone calls. We may also collect your year or date of birth to enable us, for example, to assess whether you qualify to be a Dasher and to determine if you are eligible to provide deliveries of alcohol.
- Driver and Vehicle Information – We may collect driver and vehicle information, such as your driver's license number, license plate and other vehicle and registration information, and insurance information.
- Financial and Payment Information – We may collect financial information to, for example, facilitate payments to Dashers. This may include bank and bank account information, including routing and account numbers, and order payment information, including expense reimbursement requests.

(*Id.*) Then, in Section 3, "Uses of Your Personal Information" the Privacy Policy provided Plaintiff detail regarding the way her information may be used. *Id.* Next, in Section 4, "Providing of Personal Information to Third Parties," the Privacy Policy provided Plaintiff notice that her personal information may be provided to third party service providers, such as Persona:

17

#### 4. Sharing of Personal information with Third Parties

Your Personal information is not shared with third parties without your permission, except as described herein.

##### a. Related Entities

We may share your information with our affiliates (entities that control or are under the control of DoorDash) for business purposes. We will require these entities to comply with the terms of this Policy with regard to their use of your information.

##### b. Service Providers

We may share your information with our third-party service providers for certain business purposes. This information is provided in order for them to provide us services such as payment processing, advertising services, marketing partners, background and driver history check services, web analytics, data processing, IT services, Dasher support and other services.

(*Id.*) Finally, in Section 6, "Data Retention," the Privacy Policy provided Plaintiff notice of DoorDash's data retention schedule including that it may retain Plaintiff's "Personal Information for as long as your account is active or as needed to provide you services and to maintain a record of your transactions for financial reporting purposes. We will also retain and use your personal information as necessary to comply with our legal obligations, resolve disputes, and enforce our agreements." (*Id.*)

Plaintiff's allegations of BIPA violations (*see* Compl. ¶ 41(a)-(f))—namely that Persona failed to provide notice that her biometrics were being collected and stored; failed to provide a retention policy; failed to inform Plaintiff of the reasons for capturing her biometrics; and failed to obtain consent to disclose information to third parties—must fail because Plaintiff was provided with the required notices under BIPA before she allegedly provided any biometric information during her application process and provided her written consent by clicking "Continue." (*See generally* Chiu Decl., ¶ 4, Ex. 1).

## VIII.  BIPA VIOLATES THE FIRST AMENDMENT.

### a.  BIPA Is An Unconstitutional Restraint on Commercial Speech.

"[I]nformation is not in itself harmful …." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 578 (2011) (internal quotation marks omitted). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 570. Restrictions on access to information in private hands, such as customer data, violate the First Amendment. *Id.* at 576; *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999) (invalidating law that restricted use of customer information for marketing purposes). In *IMS Health*, the Supreme Court held a state statute restricting pharmacies from selling retained information about drug prescribing habits violated the First Amendment. Specifically, the Court explained that:

> … Vermont has imposed a restriction on access to information in private hands ….
> [W]e do have 'a case in which the government is prohibiting a speaker from
> conveying information that the speaker already possess.' The difference [between
> that and government information] is significant. An individual's right to speak is
> implicated when information he or she possesses is subjected to 'restraints on the
> way in which the information might be used' or disseminated.

*IMS Health*, 564 U.S. at 568.

In *U.S. West*, the Tenth Circuit held an FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "'made available to the carrier by the customer solely by virtue of the carrier-customer relationship.'" *U.S. West*, 182 F.3d at 1228 n.1. The FCC contended the regulation did not affect "speech" because it only regulated use of data. *Id.* at 1232. The court rejected this argument and held the regulation did restrict speech because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience. *Id.*

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue here—factual information voluntarily provided by consumers to identify themselves as marketplace users—is commercial speech.[1] As such, any restriction on that speech must meet three conditions in order to survive: (1) the government must have a "substantial interest" in regulating the speech, (2) the regulation must directly and materially advance that interest, and (3) the regulation must be "no[] more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980); *see also People v Sequoia Books, Inc.*, 127 Ill. 2d 271, 281 (1989) (same).

BIPA does not meet any of these conditions. First, the government has no "substantial interest" in restricting the collection, handling, or disclosure of facial geometry. The Supreme Court has held that a person has no reasonable expectation of privacy in his or her "physical characteristics" that "are constantly exposed to the public." *United States v. Dionisio*, 410 U.S. 1, 14 (1973). Person's faces are physical characteristics constantly exposed to the public. *Cupp v. Murphy*, 412 U.S. 291, 295 (1973); *see also United States v. Emmett*, 321 F.3d 669, 672 (7th Cir. 2003) ("[W]e think it is clear that a person has no expectation of privacy in a photograph of his face.") Indeed, people show their faces throughout the day every day. Therefore, once "truthful information [is] 'publicly revealed' or 'in the public domain,' a court may not constitutionally restrain its dissemination." *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979).

Second, even if the government were deemed to have a "substantial" interest in preventing the collection, handling, or disclosure of information, requiring a company to "develop a written

---

[1] BIPA is also a speaker-based restriction on speech because it explicitly does not apply to certain groups of people. In particular, BIPA exempts "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act" and "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25. In other words, BIPA regulates speech differently based on the identity of the speaker. Under *Sorrell*, speaker-based restrictions are likewise subject to heightened scrutiny. *Sorrell*, 564 U.S. at 569-70.

policy, made available to the public," to provide disclosures "in writing," and to obtain "a written release" does not directly and materially advance that interest. *See* 740 ILCS 14/1 *et seq.*

Plaintiff admits that she voluntarily provided her photo and driver's license and uploaded her photo and driver's license to be able to register as a DoorDash delivery driver. Compl. ¶ 21. Plaintiff understood that her photograph would be used to register and would be stored because they "compared them to confirm a match." *Id.* There are no allegations that her photographs were disclosed or used in any manner other than the one for which she voluntarily provided them. BIPA's requirement that disclosures be made and releases obtained "in writing" does not materially advance any interest because—as this case illustrates—other forms of disclosure and consent are equally effective.

For the same reasons, BIPA's requirements are far "more extensive than necessary to serve that interest" of preventing identity theft. As the Sixth Circuit noted in *Daniel v. Cantrell*:

> Just because Congress' goal was to prevent the disclosure of private information, does not mean that Congress intended the implementation of every conceivable method of preventing disclosures. Printing all personal information in hieroglyphics instead of English would also help prevent the disclosure of such information.

375 F.3d 377, 383-84 (6th Cir. 2004). Converting the information to "hieroglyphics" would also protect it but would be more extensive than necessary. *Id.* at 384. Prohibiting companies from collecting and using factual identifying information without making certain disclosures and obtaining written consent is even more extensive, because it restricts companies from engaging in wholly permissible activities. *See id.; see also, e.g., State v. Madrigal*, 241 Ill. 2d 463, 473 (2011) ("what is wrongful is not the gathering of such information by using a person's name or address, but rather gathering or using such information for the purpose of committing identity theft.").

Because Plaintiff's claim is premised on BIPA, which is unconstitutional, the Complaint must be dismissed in its entirety.

### b. Alternatively, BIPA Is A Content-Based Restriction Subject to Strict Scrutiny.

Alternatively, BIPA is a content-based restriction on speech because it targets only certain categories of information that can be used to identify a person. *See* 740 ILCS 14/10; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (content-based statute is one which "target[s] speech based on its communicative content"). Such content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018) (internal quotation marks omitted).

BIPA cannot meet this standard for the same reasons it cannot survive heightened scrutiny. As explained above, a person has no reasonable expectation of privacy in his or her facial geometry, which is simply a physical characteristic that is constantly exposed to the public. *Supra*, § VIII.a. The government consequently has no compelling interest in regulating the collection, use, and storage of such information. Moreover, even if the government did have an interest in regulating this information, BIPA is certainly not narrowly tailored. There is no need for the statute to require that disclosures be made and releases obtained "in writing" when other forms of disclosure and consent are equally effective. *Supra*, § VIII.a. Indeed, Plaintiff explicitly alleges that she knowingly and voluntarily provided "a photo of her Illinois Driver's License, as well as a 'selfie' picture of her face …." Compl. ¶ 21. In other words, she voluntarily relinquished any right to control that information. *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); *United States v. Caira*, 833 F.3d 803, 806 (7th Cir. 2016) (no expectation of privacy in information disclosed to third parties).

**CONCLUSION**

WHEREFORE, Defendant Persona Identities, Inc. respectfully requests that this Court dismiss

Plaintiff's Complaint with prejudice and for any other relief as the court deems just.

Dated: January 10, 2022                                   Respectfully submitted,

                                                          /s/ Amy L. Lenz
                                                          Amy L. Lenz
                                                          **BAKER & HOSTETLER LLP**
                                                          One N. Wacker Dr., Suite 4500
                                                          Chicago, IL 60606
                                                          Telephone: (312) 416-6200
                                                          Facsimile: (312) 416-6201
                                                          alenz@bakerlaw.com

                                                          Joel Griswold
                                                          **BAKER & HOSTETLER LLP**
                                                          200 S. Orange Ave., Suite 2300
                                                          Orlando, FL 32801-3432
                                                          Telephone: (407) 649-4088
                                                          jcgriswold@bakerlaw.com

                                                          *Attorneys for Defendant Persona*
                                                          *Identities, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she caused a true copy of the foregoing to Dismiss Plaintiff's Complaint and Memorandum of Law in Support of Its Motion to Dismiss to be served on counsel of record via ECF on January 10, 2022, to:

Jordan R. Frysinger
Timothy P. Kingsbury
Colin P. Buscarini
McGuire Law, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
jfrysinger@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

/s/ Amy L. Lenz

24